DAIRY FARMERS OF AMERICA, INC., F.K.A. MILK MARKETING,
INC., APPELLEE AND CROSS-APPELLANT, *v.* WILKINS,
TAX COMMR., APPELLANT AND CROSS-APPELLEE.

FARMERS DAIRY FOODS, INC., D.B.A. DAIRY FARM PRODUCTS,
APPELLEE AND CROSS-APPELLANT, *v.* WILKINS, TAX
COMMR., APPELLANT AND CROSS-APPELLEE.

DAIRY FARMERS OF AMERICA, INC., SUCCESSOR-BY-MERGER WITH MILK
MARKETING, INC., APPELLEE, *v.* WILKINS, TAX COMMR., APPELLANT.

[Cite as *Dairy Farmers of Am., Inc. v. Wilkins,*
101 Ohio St.3d 100, 2004-Ohio-321.]

(Nos. 2002–1261, 2002–1262, and 2002–1685—Submitted
September 16, 2003—Decided February 11, 2004.)

PFEIFER, J.

{¶ 1} In these three consolidated cases, we are asked to determine whether an agricultural cooperative that buys raw milk from member farmers and processes it into dairy products is engaged in agriculture. We are also asked to determine whether cleaning compounds used to clean and disinfect containers, machinery, and equipment used in the storage and processing of dairy products are exempt from Ohio use tax. For the reasons that follow, we answer these questions in the affirmative.

{¶ 2} In 1970 and 1978, eight Ohio, Pennsylvania, and Indiana agricultural cooperative associations merged to create a cooperative called Milk Marketing Incorporated ("MMI"). Roughly one half of MMI's approximately 7,000 member dairy farmers were Ohio farmers. In 1989, a Pennsylvania cooperative and an Ohio cooperative merged to form Farmers Dairy Foods, Inc. ("FDF"). Both of the original cooperatives and the newly created FDF were, at all relevant times, wholly owned subsidiaries of MMI. MMI and FDF were organized under the laws of Pennsylvania applicable to cooperatives. MMI and FDF later merged with and into Dairy Farmers of America, Inc. ("DFA").

{¶ 3} FDF purchased raw milk produced by its member dairy farmers and processed it into commercial dairy products, such as skim milk, cottage cheese, sour cream, condensed milk, ice cream mix, blended products, and cream. Approximately 95 to 98 percent of the raw milk purchased by FDF came from member dairy farmers.

{¶ 4} Federal and state regulations required FDF to clean, on a regular basis, the containers, equipment, and machinery used to store raw milk and process dairy products. FDF used two distinct methods to clean the containers, equipment, and machinery, both of which required cleaning compounds. The clean-in-place method ("CIP") involved mixing cleaning compounds with hot water and pumping the mixture through the equipment. The manual-cleaning method involved hand scrubbing with cleaning compounds the equipment that could not be cleaned using CIP. The same type of cleaning compound used to manually clean the equipment was also used to clean the floor and walls of the processing room.

{¶ 5} After the raw milk was processed into dairy products, FDF sold the dairy products, paid expenses, and gave all remaining proceeds to MMI, which, in turn, passed them on to member dairy farmers.

{¶ 6} Case No. 2002–1261 involves use-tax assessments against MMI for cleaning compounds FDF used during the audit periods July 1, 1995, to June 30, 1998. Case No. 2002–1262 involves use-tax assessments against FDF for cleaning compounds it used during the audit periods July 1, 1992, to June 30, 1995. Case No. 2002–1685 involves tax on personal property MMI claimed for tax return years 1994 and 1995. In order to determine whether the taxpayer is

entitled to an exemption in each of these cases, we must determine whether the taxpayer was engaged in agriculture. Thus, we will discuss the cases together.

{¶ 7} In case Nos. 2002–1261 and 2002–1262, DFA (as successor-by-merger with MMI) and FDF filed petitions for reassessment objecting to the taxation of the cleaning compounds used on containers, equipment, and machinery. DFA and FDF contended that FDF was entitled to an exemption pursuant to R.C. 5741.02(C)(2) and 5739.01(E)(2) because the cleaning compounds were used directly in agriculture. DFA and FDF also argued that as a properly organized agricultural cooperative under R.C. Chapter 1729, FDF was entitled to any exemption available to an individual raw-milk producer processing dairy products for human consumption.

{¶ 8} The Tax Commissioner issued final determinations denying DFA's and FDF's claims for tax exemption, and DFA and FDF timely appealed to the Board of Tax Appeals ("BTA"). The BTA affirmed in part and reversed in part the determinations of the Tax Commissioner and remanded the matters for further proceedings. Specifically, the BTA found that FDF was properly organized as a cooperative, that the activities performed by FDF were agricultural, and that the cleaning compounds used in the CIP system qualified for a use-tax exemption. The BTA determined that the cleaning compounds used to manually clean equipment were not exempt from tax because the same types of compounds were also used to clean the floors and walls of the processing room. As there was nothing in the records to show what amount of cleaning compounds was used in the CIP process as opposed to the amount of the compound used in the manual-cleaning process and on the floors and walls, the BTA remanded the matters for further fact-finding and reassessment.

{¶ 9} The Tax Commissioner appealed, claiming that *all* of the cleaning compounds should be subject to use tax because FDF's business was manufacturing, not agriculture. DFA and FDF cross-appealed, claiming that the distinction that the BTA made between chemicals used in the CIP and manual-cleaning processes was not rational and that all of the cleaning compounds should be exempt from taxation.

{¶ 10} Turning to case No. 2002–1685, for tax return years 1994 and 1995 MMI filed intercounty, consolidated personal property tax returns, which included its property and that of its wholly owned subsidiary, FDF. Subsequently, MMI filed an application for final assessment, in which it claimed that its personal property and that of FDF were used in agriculture and, therefore, were not subject to personal property tax. Because the appeal to the BTA was filed after MMI merged into DFA, it was prosecuted in the name of DFA. After referring to the two use-tax cases discussed above, the BTA determined that for personal-

property-tax purposes, DFA was engaged in agriculture. The Tax Commissioner appealed from this decision.

{¶ 11} The causes are now before this court upon appeals and cross-appeals as of right.

{¶ 12} One of the issues presented here is whether cleaning compounds used by FDF to clean containers, machinery, and equipment used for storing and processing dairy products *are* exempt from Ohio use tax. Ohio imposes a use tax on tangible personal property. R.C. 5741.02(A) states:

{¶ 13} "For the use of the general revenue fund of the state, an excise tax is hereby levied on the storage, use, or other consumption of tangible personal property or the benefit realized in this state of any service provided."

{¶ 14} However, R.C. 5741.02(C)(2) provides that the use tax is not levied on the storage, use, or consumption of tangible personal property or services the acquisition of which would not be subject to sales tax. Ohio sales tax is levied on "each retail sale made in this state." R.C. 5739.02. "Retail sale" does not include any sale where the purpose of the consumer is "to use or consume the thing transferred directly in producing a product for sale by * * * agriculture." R.C. 5739.01(E)(2). R.C. 5739.01(E)(2) also provides that "persons engaged in rendering * * * agricultural * * * services * * * for others are deemed engaged directly in * * * agriculture."

{¶ 15} Against this background, our first inquiry is whether FDF was engaged in agriculture or in rendering agricultural services for others. When interpreting the Revised Code in a previous tax case, this court applied a dictionary's definition of "agriculture" as the " 'science or art of the production of plants and animals useful to man and in varying degrees the preparation of these products for man's use and their disposal.' " *Benken v. Porterfield* (1969), 18 Ohio St.2d 133, 137, 47 O.O.2d 287, 247 N.E.2d 749, quoting Webster's Third New International Dictionary. In 1994, the General Assembly enacted R.C. 1.61, which defines "agriculture" as follows:

{¶ 16} "As used in any statute, except section 303.01 [county rural zoning] or 519.01 [township zoning] of the Revised Code, 'agriculture' includes * * * dairy production [and] the processing, drying, storage, and marketing of agricultural products when those activities are conducted in conjunction with, but are secondary to, such husbandry or production * * *."

{¶ 17} The Tax Commissioner contends that pursuant to *Benken* and R.C. 1.61, "agriculture" ended when member farmers sold their raw milk to FDF. FDF contends that it was engaged in agriculture when it processed the raw milk. We agree with FDF.

{¶ 18} The term "dairy production" used in R.C. 1.61 is not defined in the Revised Code. A dictionary definition of "dairy" is: "**1:** a room, building, or establishment where milk is kept and butter or cheese is made. \* \* \* **2:** the department of farming or of a farm that is concerned with the production of milk, butter, and cheese. \* \* \* **3:** a dairy farm; *collectively* : the cows of a farm. \* \* \* **4:** an establishment for the sale or distribution of milk or milk products." (Emphasis sic.)  Webster's Third New International Dictionary (1986) 570.

{¶ 19} A dictionary definition of "production" is: "**1a:** something that is produced naturally or as the result of labor and effort. \* \* \* **2a:** the act or process of producing, bringing forth, or making. \* \* \* **b:** the creation of utility: the making of goods available for human wants. \* \* \* **5:** The total output of a commodity."  Id. at 1810.

{¶ 20} After reviewing these definitions, we conclude that "dairy production" includes the production of milk, butter, and cheese.  The R.C. 1.61 definition of "agriculture" includes the processing of agricultural products, if the processing is conducted in conjunction with, but secondary to, the production.  We conclude, as did the BTA, that an agricultural cooperative that buys raw milk from its member farmers and processes it into dairy products, is engaged in agriculture or in rendering agricultural services for others.  No other conclusion makes sense. FDF and similar cooperatives are created to serve their member farmers and are incapable of operating independently of them.

{¶ 21} Next, we must determine whether FDF was properly organized to engage in agriculture.  FDF was a Pennsylvania cooperative.  Pennsylvania cooperative law provides in 15 Pa.C.S.A. 7506:

{¶ 22} "An association may be incorporated under this chapter for the purpose of engaging in any cooperative activity for producers of agricultural products in connection with:

{¶ 23} "(1) Producing, assembling, marketing, buying, selling, bargaining or contracting for agricultural products, or \* \* \* processing \* \* \* storing, warehousing, handling, transporting, shipping or utilizing such products, or manufacturing or marketing the by-products thereof."

{¶ 24} During the pertinent time, R.C. 1729.02 provided that a cooperative could be organized for the following purposes: "[T]o engage in any activity in connection with the marketing or selling of the agricultural products of its members [or] with the \* \* \* processing \* \* \* of such products."  1953 H.B. No. 1. Former R.C. 1729.03(A) stated that cooperatives could "engage in any activity in connection with the marketing, selling, \* \* \* processing, \* \* \* packing, grading, storing, handling, or utilization of any agricultural products produced or delivered to it by its members."  1953 H.B. No. 1.

{¶ 25} Former R.C. 1729.25 provided:

{¶ 26} "Any corporation or association organized under laws of another state that are generally similar to sections 1729.01 to 1729.27, inclusive, of the Revised Code, may carry on any proper activities in this state * * *." 1953 H.B. No. 1. We conclude that 15 Pa.C.S.A. 7506 and R.C. Chapter 1729 are generally similar, and therefore we agree with the BTA that FDF was properly organized to be engaged in agriculture.

{¶ 27} By law, all exemptions afforded to a cooperative's member farmers pass through to the cooperative. R.C. 1729.84 [1] states:

{¶ 28} "Any exemptions under any law applying to agricultural products in the possession or under the control of the individual producer also shall apply to such products delivered by its producer members, as long as such products are in the possession or under the control of an agricultural cooperative."

{¶ 29} We conclude that FDF was entitled to any exemption that its member farmers were entitled to. Accordingly, we affirm the BTA's decision in case No. 2002–1685, vacating the personal property tax assessments against DFA, successor-by-merger with FDF and MMI.

{¶ 30} Next, we must determine whether the cleaning compounds used by FDF to clean the containers, equipment, and machinery were used directly in agriculture. There is little dispute over this issue. The Tax Commissioner states in one of his briefs: "The chemicals FDF purchased were used to clean the storage silos, the various equipment used to process the various dairy products produced by FDF, and the floors and walls of the plant." We conclude that cleaning compounds used by an agricultural cooperative to clean containers, equipment, and machinery used to process milk received from its members into dairy products are used in agriculture or in rendering agricultural services for others and are therefore exempt from use tax.

{¶ 31} Not all of the cleaning compounds used in the manual-cleaning process were used on the containers, equipment, and machinery that were used to process dairy products. FDF used that same type of compound to clean the floors and walls of the processing room. We conclude that cleaning compounds so used were not used in agriculture and were therefore not exempt from use tax.

{¶ 32} In summary, we hold that when a cooperative processes raw milk into dairy products after purchasing the raw milk from member farmers, the cooperative is engaged in agriculture or in the rendering of agricultural services for others. We affirm the BTA's decision that FDF was a properly organized

---

1. R.C. 1729.84 is substantially the same as former R.C. 1729.23, which was in effect during the pertinent time.

cooperative engaged in agriculture or in rendering agricultural services for others. Accordingly, we conclude that the cleaning compounds used by FDF in the CIP process and the cleaning compounds used to manually clean containers, equipment, and machinery used in the processing of dairy products are exempt from use tax under Ohio law. The compounds used to clean the processing room or any other part of the plant are not exempt. Because we are unable to determine the amount of cleaning compounds that are not exempt, we remand that issue to the BTA.

Decisions affirmed in part,
reversed in part
and causes remanded
in case Nos. 2002–1261
and 2002–1262.

Decision affirmed in
case No. 2002–1685.

MOYER, C.J., RESNICK, F.E. SWEENEY, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Jones, Day, Reavis & Pogue and Charles M. Steines, for appellee and cross-appellant, Dairy Farmers of America, Inc., successor-by-mergers with Milk Marketing, Inc., and Farmers Dairy Foods, Inc.

Jim Petro, Attorney General, and Duane M. White, Assistant Attorney General, for appellant and cross-appellee.